ARGALL, v. SEYMOUR et al.

BIERMAN et al. v. SAME.

(Circuit Court, S. D. Iowa, C. D. May, 1883.)

1. FRAUDULENT CONVEYANCES — CHATTEL MORTGAGES — CHANGE OF POSSESSION — RECORDING.

When a chattel mortgage authorizes the mortgagee to take possession at any time, the fact that he does not record it for over 30 days, and allows the mortgagor to remain in possession for about 70 days, selling from the stock in the usual course of business, does not avoid the mortgage as to prior existing creditors, in the absence of any fraudulent intent.

2. SAME—INTERVENING CREDITORS.

But as to a prior creditor, who extended the time of payment while the mortgage was unrecorded, the mortgage is void.

At Law. Proceeding in garnishment.

McCRARY, J., (orally.) These cases are before me, having been submitted upon the answer of the garnishee and other testimony taken upon the issue joined thereon, by stipulation of counsel jury being waived. The proceeding is against one Toy, as garnishee; and the claim of the plaintiffs in the several cases—I believe there are a number of them, all to be determined by the ruling upon these two—is that Toy, as garnishee, is responsible to certain judgment creditors of A. W. Seymour for the value of the stock of goods which Mr. Toy took under a chattel mortgage, and caused to be sold, receiving the proceeds. Seymour was a merchant in the town of Alta, in the northern part of this state, carrying on a retail establishment. Being indebted to Mr. Toy for money advanced by Toy to him in order to enable him to pay certain debts, he executed a chattel mortgage upon his stock of goods. The mortgage was dated on the 30th of September, 1881. It was not filed for record until the 3d of November, 1881, a period of about 30 days. Possession was not taken until the 12th of December, 1881. During the period from the time of the execution of the mortgage until the time when possession was taken, the mortgagor, Seymour, remained in possession of the stock of goods, and continued to deal with it, making sales therefrom in the ordinary course of business. There was no provision in the mortgage authorizing him to retain possession and continue to make sales; but he did so, with the consent, undoubtedly, of the mortgagee, and that was the understanding and purpose, as clearly appeared in the proof. The claims of these plaintiffs, with one exception, to which I shall presently refer, all, so far as I am advised, antedated the execution of the mortgage. In other words, none of them, with the exception to be noted, contracted with the mortgagor after the execution of the mortgage and before its record.

The rule laid down in the case of Robinson v. Elliott, 22 Wall. 523, is recognized as establishing this proposition: A mortgage of chattels, which provides that the mortgagor may retain possession of the property and continue to deal with it as his own by selling therefrom from time to time, is at least constructively fraudulent as to creditors, and therefore void. That case went no further than that. It held that, where

the mortgage itself by its own terms provided that the mortgagor should retain possession and continue to deal with the property as his own, it was constructively fraudulent and void. But I am of opinion that another proposition necessarily follows, and that is this: That where such a mortgage does not upon its face provide for the retention of possession by the mortgagor, and that he may continue to deal with the property as his own, yet, if it be shown by proof that such was the understanding of the parties, and that the mortgagor did in fact retain possession of the goods and continue to deal with them as his own by selling portions thereof, etc., the same result follows, and the mortgage must be held void; that is to say, it is not a question as to the nature of the proof by which the character of the transaction is to be established, but it is a question as to the fact itself,—as to the nature of the transaction itself. This may be shown by the terms and stipulations of the mortgage. It was so shown in the case of *Robinson* v. *Elliott.* And it may also appear by evidence *aliunde* the mortgage; and, if it is established as a fact in either mode, the same result must follow.

But there is another question here, and that is this: Whether in a case where the mortgage is silent upon the question of possession, and makes no provision authorizing the mortgagor to continue to deal with the property mortgaged, and the mortgagee delays for a brief period to take possession under it, and permits the mortgagor during that period to deal with it as his own, this itself, in the absence of proof of actual or intentional fraud, will render the mortgage void in law. This question is not settled by the case of *Robinson* v. *Elliott,* because there the possession had continued for more than two years in the mortgagor after the execution of the mortgage, and during all that time he had continued to deal with the property as his own, being authorized so to do by the express terms of the mortgage itself. In the present case the possession of the mortgagor was continued only about 60 days, and I am not prepared to say that we must necessarily hold the mortgage to be fraudulent alone because the mortgagee delays to take possession for a period of time such as that, and no longer than that. I think if there is no proof of actual fraud, or of an intent to cover up the property for the purpose of hindering other creditors, and if possession be delivered before any rights of third parties have intervened, that from the time of such delivery it may be held to be as valid as if executed at the date of such delivery. As to persons who deal with the mortgagor after the execution of the mortgage, and before its recording, I am of opinion that they may be treated as having dealt upon the faith of his ownership of the goods, he being then in possession. In other words, I adhere to what was said in the case of *Crook's Assignee* v. *Stuart,* reported in 2 McCrary, 13, 7 Fed. Rep. 800. The doctrine laid down in *Robinson* v. *Elliott* has never been extended so far as to render void absolutely a transaction such as that shown by the evidence in this case; and the courts do not seem inclined to extend the doctrine of that case further than its facts require. See *Brett* v. *Carter,* 2 Low. 458; *Miller* v. *Jones,* 15 N. B. R. 150.

The mortgage I am considering contained a provision authorizing the mortgagee to take possession at any time. There is some proof tending

tö show that he abstained for a time from doing so in consequence of a promise of the mortgagor to apply the proceeds of sales to the payment of the mortgage debt. The case is therefore in several respects unlike that of *Robinson* v. *Elliott*. These propositions being decided, counsel can determine as to how far they affect the several cases growing out of this transaction. I am prepared to say that as to the plaintiffs here in one of these cases—the case of Bierman, Heidelberg & Co.—the proof shows that they dealt with Seymour after the execution and before the recording of the chattel mortgage, upon the faith of his ownership of the stock of goods, and that therefore the mortgage as to them must be held to be void. They dealt with Seymour while he was in possession of the goods. True, their debt had been previously contracted, but on the 2d of November the time for payment was extended, and a new note was taken. At that date Seymour was in possession of the stock of goods, and there was no recorded lien thereon. Following the decision of this court in *Crook's Assignee* v. *Stuart*, I must hold that as to them the mortgage is void, and that they are entitled to judgment against the garnishee accordingly.